In re Robert FULTON, Marilyn Fulton, Debtors.

**Bankruptcy No. 85A–00764.**

United States Bankruptcy Court, D. Utah, C.D.

Aug. 23, 1985.

Anthony Schofield, Ray, Quinney & Nebeker, Provo, Utah, for First Security Bank.

Dean L. Zabriskie, Provo, Utah, for debtors.

## MEMORANDUM OPINION

JOHN H. ALLEN, Bankruptcy Judge.

### CASE SUMMARY

This matter is before the Court on the motion of First Security Bank of Utah to dismiss the debtors' Chapter 7 case on the ground that the debtors are ineligible to be debtors pursuant to Section 109(f) of the Bankruptcy Code. The Court is called upon to decide whether debtors whose joint petition under Chapter 7 was dismissed without prejudice because the debtors forgot to appear at the Section 341 meeting of creditors are eligible to file a successive petition within 180 days following dismissal. For the reasons hereinafter set forth, the Court holds that these debtors are eligible for Chapter 7 relief.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 1985, Robert and Marilyn Fulton, the debtors, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On February 1, 1985, the clerk of the court sent a notice to the debtors, their attorney, and all creditors of the date and time set for the meeting of creditors under Section 341 of the Bankruptcy Code. The notice advised that pursuant to Standing Order # 19 of this Court[1], a voluntary case would be dismissed if the debtors failed to attend the meeting. According to the testimony of Robert Fulton, he wrote down the wrong date for the meeting in his daily reminder book and, consequently, the debtors failed to appear. As a result, the case was dismissed without prejudice by order dated February 19, 1985.

On March 11, 1985, the debtors refiled under Chapter 7. First Security Bank of Utah moved to dismiss the second petition on the ground that Section 109(f) rendered the debtors ineligible for relief for 180 days following dismissal of the first Chapter 7 petition. The matter was heard on May 9, 1985, at which time the Court received evidence and heard the arguments of the parties. Given the importance of this question to this and other cases, the matter was taken under advisement. Having considered the evidence and arguments presented and the file in this case, and upon its own review of the applicable statute, its legislative history, cases, and other authorities, the Court renders its decision as follows.

## ISSUES

Resolution of this controversy turns on three basic issues: (1) whether a meeting of creditors under Section 341 of the Bankruptcy Code is an "appear[ance] before the court"; (2) whether the word "willful" as it appears in Section 109(f)(1) applies both to debtors' appearances before the Court in proper prosecution of a case and to their failures to abide by orders of the Court; and (3) whether the debtor's mistaken nota-

---

1. Dismissal under Section 707 and Standing Order # 19 is a sanction to enforce the debtor's duty imposed by Section 343, but does not give the debtor an option to disobey. The Court will consider the interests of creditors before automatically dismissing the case for failure to attend the meeting of creditors. Standing Order # 19 provides:

> The court finds that the conduct described below constitutes unreasonable delay by the debtor that is prejudicial to creditors within the meaning of 11 U.S.C. §§ 707(1), 1112(b)(3) and 1307(c)(1). The court further finds that the notice and hearing requirements of those sections are met by this order under these special circumstances. Therefore, and with good cause appearing, it is
>
> ORDERED, that a voluntary case shall be dismissed where:
>
> 1. the debtor fails to appear at a properly scheduled meeting of creditors; or
> 2. the debtor's attorney fails to appear at a properly scheduled meeting of creditors and as a result the parties present are unable to examine the debtor; or
> 3. the statement of affairs, schedules, budget and chapter 13 plan (as applicable) are not timely filed. For the purpose of this subparagraph, timely is defined as:
> a. not more than 15 days after the petition was filed unless the court grants a motion to extend the time for filing, and then

> b. not less than five (5) business days prior to the date set for the meeting of creditors; or
> 4. a debtor whose schedule of assets and liabilities includes consumer debts fails to timely file his statement of intentions with respect to property of the estate securing consumer debts; or
> 5. the debtor in a chapter 13 case fails to make the interim payment required to be paid to the standing trustee at the meeting of creditors.
>
> The resulting order of dismissal shall be issued without a hearing, except as provided below, and the clerk of the court is directed to prepare and enter the same. In a joint case where only one spouse appears at the meeting of creditors, the cases shall be bifurcated and the appropriate dismissal entered.
>
> If, at the meeting of creditors, any party-in-interest objects to dismissal pursuant to subsection 1, 2, 3 or 4 of this Standing Order, said dismissal shall be stayed. The objecting party shall set a hearing and give notice to the debtor, the debtor's attorney, the trustee, and any other party-in-interest appearing at the meeting of creditors. If no hearing on the objection is held within ten (10) days after the meeting of creditors, the clerk of the court is directed to enter the order of dismissal unless the Court orders otherwise.

tion in his diary was "willful" within the meaning of Section 109(f)(1).

## DISCUSSION

In 1984, as part of the consumer credit amendments, a new subsection (f) was added to Section 109 of the Bankruptcy Code,[2] which provides as follows:

(f) Notwithstanding any other provision of this section, no individual may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

In the years immediately following enactment of the Bankruptcy Code, it was widely perceived in the consumer credit industry that Congress had gone too far in promoting the interests of debtors at the expense of their creditors. Section 109(f) was designed to balance the scales more fairly by providing the courts with greater authority to control abusive multiple filings by individual debtors. S.Rep. No. 98–65, Committee on the Judiciary, 98th Cong., 1st Sess. 74, 103 (April 26, 1983). *See In re Patel*, 48 B.R. 418, 419 (Bkrtcy.M.D.Ala. 1985); *In re Ellis*, 48 B.R. 178, 179, 12 B.C.D. 1227 (Bkrtcy.E.D.N.Y.1985); *In re Nelkovski*, 46 B.R. 542, 543, 12 C.B.C.2d 678 (Bkrtcy.N.D.Ill.1985); 2 COLLIER ON BANKRUPTCY ¶ 109.06, at 109–26 (15th ed. 1985). Prior to enactment of Section 109(f), a debtor whose case was dismissed prior to discharge upon his own or a creditor's motion could immediately refile a new petition. *In re Patel, supra*, 48 B.R. at 419. It is clear, however, that in enacting

Section 109(f) Congress did not intend to render ineligible all repeat petitioners whose cases were dismissed. *Id.*

In interpreting 109(f), we must "remember that statutes always have some purpose or objective to accomplish whose sympathetic and imaginative discovery is the surest guide to their meaning." *In re Gibraltor Amusements, Ltd.*, 291 F.2d 22, 28 (2d Cir.), *cert. denied Gibraltor Amusements, Ltd. v. Wurlitzer Company*, 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190 (1961) (Friendly, J., dissenting). Unfortunately, the key word "willful" is not defined in the statute, and the legislative history relating to the reach of the provision is, like much of the legislative history of the 1984 amendments, sketchy and inconclusive.

Senator Hatch, a member of the House-Senate Conference Committee on H.R. 5174, spoke briefly to the amendment in his floor statement, as follows:

The number of consumer bankruptcy cases filed has risen dramatically each year since the bankruptcy code was last amended in 1978. Several witnesses before the Senate Judiciary Committee pointed to these changes in the Code as the principal cause of the increase. The 1978 amendments generally eased a debtor's access to bankruptcy to avoid excessive indebtedness. Title II contains over 30 substantive amendments to curb abuses of the bankruptcy code and make its use truly a last resort.

An example of the types of reform included in title III is the provision which addresses the subject of repetitive filings. A debtor would not be eligible for bankruptcy relief if a prior case filed by the same debtor had been dismissed within 180 days for *failure to appear at a meeting of creditors or for failure to follow orders.*

130 Cong.Rec. S8894, (daily ed. June 29, 1984), 1978 U.S.Code Cong. & Admin.News, pp. 597–98 (emphasis added).

---

**2.** Bankruptcy Amendments and Federal Judgeship Act of 1984 § 301, Pub.L. 98–353, 98 Stat. 352 (July 10, 1984). Section 109(f) applies only

to cases filed more than 90 days after enactment of the amendments, *i.e.*, after October 9, 1984. *Id.* § 553(a), 98 Stat. 392.

This Court believes that Senator Hatch's remarks illuminate generally the Congressional policy of controlling abusive repetitive filings, but it cannot conclude, based on a single observation of a complex provision, that failure to attend the meeting of creditors, without more, must result in a dismissal which triggers the 180-day ineligibility rule of Section 109(f). Senator Hatch does not mention the term "willful" and its application to the statute. Mere "failure to follow orders" does not operate to bar refiling; the debtors fall under Section 109(f) only when the prior case was dismissed for "willful" failure to abide by orders of the Court. The Senator's remarks, however, may be more significant in understanding what Congress meant by an "appear[ance] before the Court in proper prosecution of the case."

Under Section 55b of the former Bankruptcy Act, 11 U.S.C. § 91(b) (repealed) the referee or bankruptcy judge presided over the first meeting of creditors. A major reform of the Bankruptcy Code was to separate bankruptcy judges from involvement in administering debtors' estates, which was considered to be incompatible with the proper performance of their judicial responsibilities. *See In re Curlew Valley Associates,* 14 B.R. 506, (Bkrtcy.D.Utah 1981), H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 331 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6287. *Cf.* Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Pt. I at 92–94 (1973). Section 341(c) of the Bankruptcy Code prohibits the Court from presiding at or attending meetings of creditors.[3] Bankruptcy Rule 2003(b)(1) provides that in Chapter 7 cases the clerk of the court shall preside unless either the court designates a different person, such as the interim trustee, or the creditors who may vote for a trustee and who hold a majority in amount of claims that vote designate a different presiding officer. The Advisory Committee Note observes:

Use of the clerk is not contrary to the legislative policy of § 341(c). The judge remains insulated from any information coming forth at the meeting and any information obtained by the clerk must not be relayed to the judge.

Although the clerk may preside at the meeting, the clerk is not performing any kind of judicial role, nor should the clerk give any semblance of performing such a role. It would be pretentious for the clerk to ascend the bench, don a robe or be addressed as "your honor". The clerk should not appear to parties or others as any type of judicial officer.

A fundamental purpose of the bankruptcy law is to bring the debtor's assets under the jurisdiction of the Court and to compel the debtor to submit to examination by creditors concerning his financial transactions and the disposition of his property. The debtor is required to appear at the meeting of creditors and submit to examination under oath. 11 U.S.C. § 343. The purpose of this examination is to enable creditors and the trustee to determine if assets have been improperly disposed of or concealed, or if there are grounds for objection to discharge. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 332 (1977), 1978 U.S.Code Cong. & Admin. News, pp. 5787, 6288; *In re Martin,* 12 B.R. 319, 320, 7 B.C.D. 1185 (Bkrtcy.S.D. Ala.1981). At the meeting of creditors, the debtor may properly be questioned concerning his acts, financial condition, or as to any matter which may affect the administration of his estate or his right to a discharge. Bankruptcy Rule 2004(b). The debtor's duty to attend the meeting of creditors and submit to examination is mandatory. *In re Rust,* 1 B.R. 656, 657, 5 B.C.D. 1182 (Bkrtcy.M.D.Tenn.1979).

Pursuant to 28 U.S.C. § 151, the bankruptcy judges in each judicial district constitute a unit of the district court known as the bankruptcy court for that district.

---

**3.** Section 341(c) provides:

The Court may not preside at, and may not attend, any meeting under this section.

Since Section 341(c) prohibits the Court from presiding over the first meeting of creditors, Section 109(f) would appear at first blush not to apply to dismissals under Standing Order # 19 for failure to appear at the first meeting of creditors. But the meaning of particular terms, such as the word "court" as used in Section 109(f), is to be derived not only by consideration of the words themselves, but also by examination of the context, the purpose, and the circumstances under which the terms are used. *See General Electric Co. v. United States,* 610 F.2d 730, 734, 221 Ct.Cl. 771 (1979). Section 109(f) was enacted by Congress in response to what was perceived as a serious abuse of the bankruptcy process by some debtors. The statute should be interpreted to effectuate its remedial purpose, not to defeat it. These considerations lead to the conclusion that Congress intended for the word "court" as used in Section 109(f)(1) to be a comprehensive term of greater breadth than that term normally enjoys under the Bankruptcy Code, particularly in 28 U.S.C. § 151 and 11 U.S.C. § 341(c). In this sense, it should be understood to include the meeting of creditors under Section 341(a). The Court's interpretation of Section 109(f)(1) is supported by the overall structure of the Bankruptcy Code. The Code contemplates that a Chapter 7 debtor usually will appear before the "Court" only twice—at the meeting of creditors and the discharge hearing. *See* 11 U.S.C. §§ 343, 524(d). Under the local practice of this district, as in other districts, a debtor is not absolutely required to attend a discharge hearing in order to receive a discharge. *See, e.g., In re Rennels,* 37 B.R. 81, 11 B.C.D. 510, 9 C.B.C.2d 1390 (Bkrtcy.W.D.Ky.1984). It seems highly unreasonable to conclude that Congress meant to exclude the meeting of creditors—possibly the debtors' only appearance in a bankruptcy forum—from the meaning of "appearance before the court." Accordingly, this Court holds that the debtors' appearance and submission to examination under oath at the meeting of creditors under Section 341(a) constitutes an "appear[ance] before the court" as used in Section 109(f)(1).

■ In this district, a Section 341 meeting is convened by notice sent to creditors by the clerk of the court. Such a notice is equivalent to an order of the court. *See* Local Rule 13(d). Thus, failure to attend the meeting of creditors may also constitute a failure to abide by orders of the court.

■ Turning next to the interpretation of the "willful" standard of Section 109(f)(1), the Court must first consider whether that term applies to the second clause of subsection (1). By placing a comma after the word "court," Congress created an ambiguity in the statute. Since the legislative history is silent on the subject, the Court must look to the policy to be effectuated by the provision in light of the Bankruptcy Code's fundamental policy of promoting a fresh start for honest debtors.

The central purpose of adding Section 109(f)(1) was to curb abusive repetitive filings by individual debtors. There is nothing to indicate, and it is unreasonable to suppose, that Congress meant to restrict the eligibility of debtors whose cases were dismissed through no fault of their own. Furthermore, it would not comport with good sense to impose two separate standards: a "willful" standard, involving intent, for failure to abide by orders of the court, and a "strict liability" standard, in which intent does not matter, for failure to appear before the court. Such a construction would create an incongruity in the statute that is inconsistent with its underlying purpose. This Court holds, therefore, that dismissal which precludes refiling for 180 days under 11 U.S.C. § 109(f)(1) must be predicated upon either (1) willful failure of the debtors to abide by orders of the court, or (2) willful failure of the debtor to appear before the court in proper prosecution of the case.

The final question involved here is the meaning of the term "willful" itself. Counsel for First Security Bank urges the Court to adopt a test for willfulness that

encompasses every situation in which the required act is within the ability of the debtors to comply.[4] Counsel for the debtors argued that forgetfulness or inadvertence are not "willful" behavior within the meaning of Section 109(f)(1). The bankruptcy courts which have considered this issue are in agreement that the term "willful" must be given its traditional meaning, which connotes intentional, knowing, and deliberate behavior. *See In re Morris*, 49 B.R. 123, 124, 12 B.C.D. 1341 (Bkrtcy.W.D. Ky.1985) ("willful" act is an act done intentionally, deliberately, knowingly, and purposely, without justification or excuse); *In re Ellis, supra*, 48 B.R. at 179 (a willful failure to do a required act necessitates a showing that the person, with notice of his responsibility, intentionally disregarded it or demonstrated "plain indifference"); *In re Nelkovski, supra*, 46 B.R. at 544 (at the least, the term "willful" means "deliberate").

█ It is a familiar rule of statutory interpretation that words which are undefined in a statute should be given their common or customary usage. *See* N. Singer, 2A SUTHERLAND ON STATUTORY CONSTRUCTION § 46.01, at 74 (Sands 4th ed. 1984 Rev.) *Cf. In re Ellis, supra*, 48 B.R. at 179 (it is reasonable to assume that Congress intended the term "willful" to have its usual meaning).

█ There is also a presumption that identical words used twice in the same statute have the same meaning. *Gregg v. Manno*, 667 F.2d 1116, 1117 (4th Cir.1981); *Director, Office of Workers' Compensation Programs v. Forsyth Energy, Inc.,* 666 F.2d 1104, 1108 (7th Cir.1981); *Fortin v. Marshall*, 608 F.2d 525, 528 (1st Cir. 1979); *Hotel Equities Corp. v. C.I.R.*, 546 F.2d 725, 728 (7th Cir.1976); *New England Electric System v. Securities and Exchange Commission*, 346 F.2d 399, 405 (1st Cir.1965), *rev'd* 384 U.S. 176, 86 S.Ct. 1397, 16 L.Ed.2d 546 (1966); *C.I.R. v. Ridgway's Estate*, 291 F.2d 257 (3d Cir.1961); *Ford Motor Co. v. Insurance Co. of North America*, 494 F.Supp. 846, 851 (E.D.Mich. 1980), *vacated* 699 F.2d 421 (6th Cir.1982); *In re Missionary Baptist Foundation of America*, 12 B.R. 570, 572, 7 B.C.D. 1106 (Bkrtcy.D.Tex.1981), *aff'd* 667 F.2d 1244 (5th Cir.1982). *See generally*, SUTHERLAND ON STATUTORY CONSTRUCTION, *supra*, § 46.06, at 104.[5]

The term "willful" appears in Section 523(a)(6) of the Bankruptcy Code. That Section excepts from discharge any debt "for willful and malicious injury by the debtors to another entity or to the property of another entity." The legislative history indicates the meaning of the term "willful" as used in subdivision (6):

> Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 139 [193] U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754], held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977), 1978 U.S.Code Cong. & Admin. News, pp. 6320–21. *See also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978), 1978

---

4. At the hearing, counsel for First Security Bank argued as follows:

> This presents, I think, the hard case under Section 109(f). If there were a gross malicious intent in not appearing, it would be a clear case that the court ought to dismiss. But I think if the court today says, well, just because Mr. Fulton forgot or made an improper entry in his calendar or otherwise was unable, through negligence, to appear, that does not constitute willfulness. If the court makes that finding, what I really think this says, is any time a debtor does not appear, all he needs to do to avoid a dismissal under Section 109, is to come to court and say it was an oversight. I just forgot.
> Transcript of hearing at 8–9 (May 9, 1985).

5. The presumption that the same words or phrases have the same meaning when used in different parts of a statute may be rebutted if the words or phrases are used in such dissimilar connections as to warrant the conclusion that they were employed in different parts of the act with different intents. *General Electric Co. v. United States, supra,* 610 F.2d at 734. *Compare, e.g.,* the "fair and equitable" test of 11 U.S.C. § 1113(b)(1)(A), *with* the "fair and equitable" test of 11 U.S.C. § 1129(b)(1).

U.S.Code Cong. & Admin.News, p. 5865. It is thus clear from both the House and Senate reports that "willful" under Section 523(a)(6) means "deliberate or intentional."

While there is no clear indication that Congress intended the word "willful" to have the same meaning in Section 109(f)(1) that it does in Section 523(a)(6), there is a presumption in favor of that construction and nothing in the context of either usage to warrant a different conclusion. Furthermore, the Section 523(a)(6) definition of "willful" is the conventional definition given to the term. *See In re Ellis, supra,* 48 B.R. at 179. Therefore, this Court holds that the term "willful," as used in 11 U.S.C. § 109(f)(1) means "deliberate or intentional."

## DECISION

The debtors' first Chapter 7 case was automatically dismissed by the Court pursuant to Section 707 and Standing Order # 19 when they failed to appear at the first meeting of creditors. Not all such dismissals reader the former debtors ineligible to refile. Ineligibility under Section 109(f)(1) requires a finding by the Court of deliberate or intentional *i.e.,* "willful," failure either to obey orders of the court or to appear before the Court in proper prosecution of the case.

Ordinarily, in motion practice before this Court, the movant bears the burden of proof. However, in this case the burden is on the debtors to show that they are eligible for relief under the Bankruptcy Code. *Cf. In re Mozer,* 1 B.R. 350, 351, 5 B.C.D. 1029, 1 C.B.C.2d 166 (Bkrtcy.D.Colo. 1979) (burden of showing jurisdiction of the bankruptcy court must fall on the party seeking to invoke it). At hearings on motions to dismiss under Section 109(f)(1) the debtors will be permitted to testify and present evidence that the prior dismissal was for some cause other than his willful failure to abide by orders of the Court or to appear in proper prosecution of the case. On a case-by-case basis the Court will review the debtors' conduct in their prior bankruptcies to determine whether the to-

tality of the circumstances constitutes "willful failure." *In re Patel, supra,* 48 B.R. at 419. Repeated conduct may give rise to an inference that the debtor's actions were deliberate, *In re Nelkovski, supra,* 46 B.R. at 544, and the credibility of the debtor's explanation will be weighed in the light of those circumstances. The Court is obliged to consider not merely the debtors' denial that their conduct was willful, but all of the evidence properly presented to it in determining whether or not the failure was deliberate or intentional.

In this case, the debtor's testimony was credible and convincing. He inadvertently wrote down the wrong date in his daily reminder book and, consequently, the debtors did not appear at the meeting of creditors. The debtors' failure to appear, though perhaps negligent, was neither deliberate nor intentional and, therefore, not "willful" within the meaning of Section 109(f)(1). Accordingly, the motion to dismiss shall be denied.

The Court shall enter an order consistent with this memorandum opinion.