**In re MISSIONARY BAPTIST FOUNDATION OF AMERICA, INC., (Parent Corporation) and the following of its wholly-owned subsidiaries: Management Services Consultants Associates, Inc., Associated Memorial Homes of West Texas, Inc., Associated Memorial Homes of Central Texas, Inc., Associated Memorial Homes of Lubbock, Inc., Texas Homemaker Service, Inc., Associated Memorial Homes of the Greenbelt, Inc., and Missionary Baptist Foundation of America Housing, Inc., Debtors.**

Bankruptcy No. 580–00084.

United States Bankruptcy Court,
N. D. Texas,
Lubbock Division.

July 16, 1981.

Dennis O. Olson, Lubbock, Tex., for debtor.

Robert B. Wilson, Lubbock, Tex., Trustee.

Joseph V. Boerner, Crenshaw, Dupree and Milam, Lubbock, Tex., for Brooks Supermarket.

## ORDER ON PRIORITY CLAIM OF BROOKS SUPERMARKET, INC.

BILL H. BRISTER, Bankruptcy Judge.

Missionary Baptist Foundation of America, Inc. ("MBFA") filed petition for order for relief under Chapter 11 of Title 11, United States Code, on October 15, 1980. The final prepetition payroll issued by the debtor failed to clear the bank account, resulting in $185,649.79 in unpaid payroll checks outstanding at the time the petition was filed. Brooks Supermarket, Inc. ("Brooks") cashed worthless payroll checks totalling $7,231.48 for employees of MBFA. It filed its claim in that sum and seeks priority treatment under 11 U.S.C. § 507(a)(3), which provides priority to the extent of $2,000.00 to wages earned by an individual within ninety days of the filing of the petition.

The debtor and the trustee attack the claim of entitlement to priority treatment, citing as basis for their opposition the provisions of 11 U.S.C. § 507(d):

"An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5) or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection."

The facts are uncontested. At the time the Chapter 11 petition was filed the debtor was operating 24 nursing homes with approximately 1600 hourly employees and supervisory personnel. Those employees were paid on the tenth and twenty fourth of each month. Many of those employees cashed their payroll checks at local grocery stores and banks.

For several years Brooks had cashed payroll checks for the MBFA employees who lived in its trade area. Its motive in cashing the checks was not altogether altruistic, because, in addition to the expectation that the employee whose check was being cashed would make purchases from the grocery store, Brooks charged a fee[1] for cashing the checks—ranging from twenty cents for a check up to $100 to one dollar for checks in excess of $350. Brooks did, in fact, cash checks for employees from the October 10, 1980, payroll totalling $7,231.48. Each check was endorsed to Brooks by the employee to whom the check was made payable with no restrictions on recourse. Each check was for less than $2,000.00 and represented wages earned by an individual within ninety days of the filing of the bankruptcy petition.

It is apparent that, if each individual employee was presenting the claim on his respective check, each claim would be a wage claim entitled to priority under § 507(a)(3). Brooks argues that it is the assignee of each of the worthless checks and that the assignment of the check to a third party carries with it any priority that the claim possessed. It cites as authority for its contention that the priority attaches to the debt and not to the person some cases under the Act, including *Shropshire, Woodliff and Company v. Bush*, 204 U.S. 186, 127 S.Ct. 178, 51 L.Ed. 436 (1907) and *Standard Oil Company v. Kurtz*, 8th Cir. 1964, 330 F.2d 178, 184.

The debtor and the trustee claim that Brooks is "subrogated" to those wage claims and that § 507(d) prevents priority treatment. They contend that the $7,231.48 indebtedness can be allowed only as an unsecured claim without priority. They argue further that the broad purpose of the Bankruptcy Code is to bring about an equitable distribution of the debtor's estate and if one claimant is to enjoy priority over the others the purposes must be clear from the Code. The burden of establishing that right to priority is on the claimant.

---

1. The trustee and the debtor have raised no issue based on the fact that this fee was charged.

The problem is in the definition of "subrogation." Historically, there has been no consistent application of the term "subrogation." There are cases which have treated the term "subrogation" in a very broad sense as including any person or entity who stands in the shoes of another. If that definition is used then the plain meaning of § 507(d) is that one cashing a worthless payroll check does not obtain the priority status.

On other occasions, courts have drawn a distinction between an "assignment," which arose in the common law, and "subrogation" which is a creature of equity. It is that distinction which Brooks urges should be applied in this case.

Still other courts have defined the term "subrogation" as being an "equitable assignment." Those cases, by definition, equate "subrogation" with "assignment."

There is even confusion in the cases cited by Brooks for its position that it claims by "assignment" and not by "subrogation." *Standard Oil v. Kurtz*, supra, was one where an entity had paid a tax claim which would otherwise have been entitled to priority treatment. In permitting that entity to enjoy the same right of priority the court noted:

"With the tax obligation thus still subsisting, it follows easily that Standard Oil, having been the payer of the tax and having been required by the Nebraska statute to effect that payment, is entitled to *subrogation* of the state's priority under § 64a(4)." (emphasis added).

Determination of the issue concerning the distinction, if any, between "assignment" of a wage claim and "subrogation" is pretermitted. There are other bases in the Code for resolution of the issue.

There is nothing contained in the legislative history of § 507(d) which *specifically* reflects the Congressional intent in restricting a subrogated entity from obtaining priority status. Some indication as to Congressional intent can be gleaned from an analysis of the provisions of the only other sections in the Code which use the term "subrogation."

■ 11 U.S.C. § 509(a), entitled "Claims of Co-debtors," provides:

"Except as provided in subsection (b) and (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor, and that pays such claim, is *subrogated* to the rights of such creditor to the extent of such payment."

§ 502(e)(1)(C) disallows any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that such entity requests subrogation under § 509 to the rights of the creditor. It appears that the term "subrogation" as contained in those sections is used in restrictive sense. It refers to sureties, co-debtors, or other entities which are liable with the debtor or which have secured a claim of a creditor. This states the general rule of subrogation. 3 Collier 15th ed. ¶ 509.02 at 509–4 (1980).

There are two presumptions of statutory construction which enure to the benefit of Brooks.

■ First, there is a presumption that where the same words are used in different parts of an act, and where the meaning in one instance is clear, other uses of the word in the act have the same meaning as that where the definition is clear. *Fortin v. Marshall*, 1st Cir. 1979, 608 F.2d 525, 528. The presumption can be overcome only by a showing that the term "subrogation" was intended to be used in a more expansive sense in § 507(d) or by demonstrating that the more restrictive definition of "subrogation" would be plainly at variance with the policy of the legislation. It is apparent in this case that Brooks is not liable with MBFA as a co-debtor nor has it secured a claim of a creditor. Brooks was not "subrogated" within the meaning of § 509(a) or § 502(e)(1)(C) and, therefore, it does not appear to be "subrogated" within the meaning of § 507(d).

■ There is another presumption which operates in favor of Brooks. It is presumed that Congress is aware of the existing constructions of a statute when it re-enacts a statute. *Alabama Association of Insurance Agents, Inc., et al. v. Board of Governors of*

the *Federal Reserve System,* 5th Cir. 1976, 533 F.2d 224, 245, vacated, in part, on other grounds, 5th Cir., 558 F.2d 729. The repeal of the prior constructions by re-enactment of a statute must be clear and manifest. *Tennessee Valley Authorities v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). The construction of the priority provisions under the Bankruptcy Act permitted one, like Brooks, who cashed a payroll check of an employee of a debtor to retain the same priority enjoyed by that employee. *Shropshire, Woodliff and Company v. Bush,* supra. In accord are cases like *Standard Oil v. Kurtz,* supra, (notwithstanding its unfortunate use of the word "subrogation.")

I conclude, therefore, that Congress did not intend to prevent one who cashed a payroll check for an employee of a debtor from enjoying the same priority for the claim which the employee possesses.

It is, therefore, ORDERED by the court, that the claim of Brooks Supermarket, Inc., be, and it is hereby, allowed as a claim in the sum of $7,231.48 with the priority afforded by § 507(a)(3).

All relief not herein granted is denied.