TATE, Circuit Judge:
 

 The debtor, Missionary Baptist Foundation of America, Inc. (“Missionary”), issued payroll checks to its employees on October 10, 1980. The claimant, Brooks Supermarket, Inc. (“Brooks”), cashed several of these checks for Missionary employees, in a total amount of $7,231.48. On October 15, 1980, Missionary filed a bankruptcy petition for relief under Chapter 11 of Title 11 of the United States Code. The checks cashed by Brooks were dishonored for lack of sufficient funds.
 

 Brooks filed a claim for the $7,231.48 in the Missionary proceedings in bankruptcy court. Brooks sought priority treatment for its claim under 11 U.S.C. § 507(a)(3), which grants priority to the extent of $2,000 to wages earned by an individual within ninety days of the filing of the petition. (None of the payroll checks cashed by Brooks for Missionary employees exceeded the $2,000 priority limit.)
 

 The trustee objected, but the court nevertheless allowed priority on the Brooks claim. 12 B.R. 570 (Bkrtcy.N.D.Tex.1981). The trustee appeals.
 
 [1]
 
 Finding that the assignments are entitled to the same priority as were the initial wage claims, we affirm.
 

 The facts, which are undisputed, are recited in greater detail in the bankruptcy court’s opinion. Both sides agree that the question whether the Brooks claim is entitled to priority turns on the interpretation given to section 507(d) of the Bankruptcy Reform Act of 1978 (“1978 Act”), 11 U.S.C. § 507(d), which states:
 

 An entity that is
 
 subrogated
 
 to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)4, (a)5, or (a)6 of this section is
 
 not
 
 subrogated to
 
 *1245
 
 the right of the holder of such claim to priority under such subsection.
 

 (Emphasis added)
 

 The trustee asserts that Brooks is “subro-gated” to the employees’ wage claims and that § 507(d) therefore precludes priority treatment, even though the underlying claims themselves undisputedly would have been entitled to priority under § 507(a)(3) had they been made by the employees themselves. Brooks, in contrast, argues that § 507(d) does not prevent priority treatment of its claims, on the theory that it is an “assignee,” rather than a “subro-gee,” of the employees’ claim, and entitled to the same priority treatment.
 

 Under the pre-1978 bankruptcy law, in the absence of special circumstances, both assignees and, at least in some instances, subrogees were entitled to the same priority as that to which their assignors or subro-gors would have been entitled.
 
 See, e.g., Shropshire, Woodliff & Co. v. Bush,
 
 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436 (1907) (assignee — wage priority);
 
 In re Columbia Tobacco Co.,
 
 121 F.2d 641, 643 (2d Cir. 1941) (subrogee — tax priority). However, at least with respect to subrogees, § 507(d) of the 1978 Act clearly changes the previous law.
 

 Section 507(d) is a rather curious provision. It was not included in the House version of the bill that became the 1978 Act (H.R. 8200, 95th Cong., 1st Sess.), nor was it included in the substitute bill passed by the Senate (S. 2266, 95th Cong., 2d Sess.). After the Senate sent its version of the bill back to the House, the floor managers from both Houses met and agreed upon a compromise bill, which was enacted into law. § 507(d) was included in the compromise bill. The floor managers who drafted this bill offered no explanation for the addition of § 507(d),
 
 [2]
 
 and commentators have been unable to identify any policy reasons that might have prompted the inclusion of this provision.
 
 [3]
 

 Noting that in many instances courts have treated the terms “assignment” and “subrogation” as synonymous, the trustee in the present case forcefully contends that the two concepts have become merged, and that Congress must have intended § 507(d) to preclude claims to priority by both assignees and subrogees. The bankruptcy court rejected this contention, and offered the following rationale:
 

 Some indication as to Congressional intent can be gleaned from an analysis of the provisions of the only other sections in the Code which use the term “subrogation.”
 

 11 U.S.C. § 509(a), entitled “Claims of Codebtors,” provides:
 

 “Except as provided in subsection (b) and (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor, and that pays such claim is
 
 subrogated
 
 to the rights of such creditor to the extent of such payment.”
 

 § 502(e)(1)(C) disallows any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that such entity requests subrogation under § 509 to the rights of the creditor. It appears that the term “sub-rogation” as contained in those sections is used in restrictive sense. It refers to sureties, co-debtors, or other entities which are liable with the debtor or which have secured a claim of a creditor. This states the general rule of subrogation. 3 Collier 15th ed. ¶ 509.02 at 509-4 (1980).
 

 There are two presumptions of statutory construction which enure to the benefit of Brooks.
 

 
 *1246
 
 First, there is a presumption that where the same words are used in different parts of an act, and where the meaning in one instance is clear, other uses of the word in the act have the same meaning as that where the definition is clear.
 
 Fortin v. Marshall,
 
 1st Cir. 1979, 608 F.2d 525, 528. The presumption can be overcome only by a showing that the term “subrogation” was intended to be used in a more expansive sense in § 507(d) or by demonstrating that the more restrictive definition of “subrogation” would be plainly at variance with the policy of the legislation. It is apparent in this case that Brooks is not liable with Missionary as a co-debtor nor has it secured a claim of a creditor. Brooks was not “subrogat-ed” within the meaning of § 509(a) or § 502(e)(1)(C) and, therefore, it does not appear to be “subrogated” within the meaning of § 507(d).
 

 There is another presumption which operates in favor of Brooks. It is presumed that Congress is aware of the existing constructions of a statute when it re-enacts a statute.
 
 Alabama Association of Insurance Agents Inc., et al. v. Board of Governors of the Federal Reserve System,
 
 5th Cir. 1976, 533 F.2d 224, 245, vacated, in part, on other grounds, 5th Cir., 558 F.2d 729. The repeal of the prior constructions by re-enactment of a statute must be clear and manifest.
 
 Tennessee Valley Authority v. Hill,
 
 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). The construction of the priority provisions under the Bankruptcy Act permitted one, like Brooks, who cashed a payroll check of an employee of a debtor to retain the same priority enjoyed by that employee, [cites]
 

 I conclude, therefore, that Congress did not intend to prevent one who cashed a payroll check for an employee of a debtor from enjoying the same priority for the claim which the employee possesses.
 

 12 B.R. at 572-73.
 

 Under the lower court’s rationale, § 507(d) would bar only sureties and co-debtors from claiming priority. This approach has appeal — it would deny priority treatment only to those who have knowingly accepted the risk of a debtor’s insolvency.
 
 Cf. In re Transamerican Freight Lines, Inc.,
 
 16 Collier Bankruptcy Cases 422, 425-26, 4 Bankruptcy Court Decisions 82 (E.D.Mich. 1978) (surety receives fee to accept risk of debtor’s bankruptcy; therefore, no equitable justification for according priority to surety’s claim). However, one problem with this view is that § 509(a) cannot logically be considered a “definition” of the term “subrogee.” § 509(a) establishes that co-debtors and sureties
 
 are
 
 subrogees, but it does not necessarily follow from this that others are
 
 not
 
 subrogees.
 

 As the bankruptcy court noted, repeals of judicial constructions of legislation are usually required to be clear and manifest. Once again, however, this does not conclusively prove that Brooks is entitled to priority treatment on its claim. § 507(d)
 
 does
 
 clearly and manifestly mandate a change of law, at least with respect to subrogees. The only question is as to the extent of the change,
 
 i.e.,
 
 whether Congress intended to change the law with respect to those formerly characterized as assignees as well as to subrogees.
 

 In this regard, we find of persuasive force the Congressional inaction in light of Judge Augustus Hand’s decision in
 
 In re Stultz Brothers,
 
 226 F. 989 (S.D.N.Y.1915). In that case, which is factually similar to the present one, Judge Hand held that a person who cashed paychecks for the employees of the bankrupt 1) was
 
 not
 
 subro-gated to the employees’ claims; 2) was an assignee of the employees’ claims; and 3)
 
 was
 
 therefore entitled, as an assignee, to assert the employees’ wage priority.
 

 Under the above-noted presumption that is often used in statutory interpretation, Congress was presumptively aware of
 
 Stultz Brothers
 
 when it passed the 1978 Act, and further presumptively aware: 1) that the courts had treated subrogation and assignment as distinct concepts in the priority context, when concerned with a claim by a creditor based upon his cashing later-dishonored checks of the bankrupt for wages,
 
 *1247
 
 and 2) that persons such as Brooks were considered assignees,
 
 not
 
 subrogees, of the wage earners for purposes of priority distinctions. Since § 507(d) makes no reference to assignees, and because the legislative history reflects no congressional disapproval of these characterizations reflected by the
 
 Stultz Brothers
 
 decision, we are unwilling to interpret § 507(d) (denying by its terms priority only to “subrogees”) as depriving wage claim “assignees” of their former priority. Accordingly, the bankruptcy judge properly allowed Brooks priority treatment on its assigned wage claim.
 

 Under the former Bankruptcy Act of 1898, the judicial policy to allow priority to assigned wage claims was designed for the protection of the worker, who is thereby enabled to liquidate his claim against the bankrupt more advantageously. Otherwise, simply to make ends meet, the employees might be forced to assign at ruinous discounts their claims for unpaid wages. In fact situations such as the present one, wage earners, who are subject to liability as endorsers of their worthless payroll checks, might (if similar priority treatment were not accorded those who cashed their wage checks) be required to reimburse the holder, possibly after the funds received by them have been depleted for basic necessities.
 
 See, e.g., In re Fuller & Bennett,
 
 152 F. 538, 540 (S.D.W.Va.1907); 3A Collier on Bankruptcy ¶ 64.205 (14th ed. 1975). At least in the absence of indicia of a legislative intent to overrule the sound policy reflected by these decisions, we adhere to the rationale of the pre-1978 decisional law that accorded the same priority to claims based on assignments by the wage earner as to claims for wages made by the wage earner himself.
 

 Accordingly, we hold that Brooks is entitled to wage priority treatment on its claim. The judgment of the bankruptcy court is therefore AFFIRMED.
 

 [1]
 

 . The 1978 Act, 28 U.S.C. § 1293(b), permits a direct appeal to a circuit court of appeals, if the parties so agree. 28 U.S.C. § 1293(b) does not become effective until April 1, 1984; however, during the transition period, parties may agree to a direct appeal to the court of appeals, pursuant to Pub.L. 95-598, Title IV, § 405(c)(1)(B) (Nov. 6, 1978), 92 Stat. 2686,
 
 reprinted in
 
 28 U.S.C.A., note preceding § 1471 (West Supp. 1981).
 

 [2]
 

 . The joint explanatory statement of the managers refers to § 507(d) in only two sentences: “Section 507(d) of the House amendment prevents subrogation with respect to priority for certain priority claims. Subrogation with respect to priority is intended to be permitted for administrative claims and claims arising during the gap period.” 124 Cong.Rec. S 17411 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini);
 
 id.
 
 H 11095 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).
 

 [3]
 

 .
 
 See, e.g.,
 
 Murphy, Creditors’ Rights in Bankruptcy § 5.20 (1980); Cowans, Cowans Bankruptcy Law and Practice 327 (Interim ed. 1980); 3 Collier on Bankruptcy ¶ 507.07 (15th ed. 1981).