**In re BRICKEL ASSOCIATES, INC., Debtor.**

**Bankruptcy No. 93–30469–11.**

United States Bankruptcy Court, W.D. Wisconsin.

June 13, 1994.

Denis P. Bartell, Ross & Stevens, S.C., Madison, WI, for debtor.

Susan V. Kelley, Lee, Kilkelly, Paulson & Kabaker, S.C., Madison, WI, for Creditors' Committee.

Thomas M. Lake, Deerfield, IL, for Freight Based Customs Brokers, Inc.

MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

On February 18, 1993, the debtor, Brickel Associates, Inc. ("Brickel"), filed for chapter

11 bankruptcy. Brickel listed Freight Based Customs Brokers, Inc. ("FBCB"), in its schedules as a creditor holding an unliquidated claim for $15,091.86. While acting as a broker and customs service for Brickel, FBCB paid certain customs duties which were not reimbursed. FBCB filed its proof of claim for $17,230.87, including $7,158.89 as priority under Bankruptcy Code § 507(a)(7)(F). Brickel and the creditors' committee did not object to the amount of FBCB's claim, but did object to any priority.

Bankruptcy Code § 507(a)(7)(F) states:

(a) the following expenses and claims have priority in the following order:

.        .        .        .        .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

.        .        .        .        .

(F) a customs duty arising out of the importation of merchandise—

(i) entered for consumption within one year before the date of the filing of the petition;

(ii) covered by an entry liquidated or reliquidated within one year before the date of the filing of the petition; or

(iii) entered for consumption within four years before the date of the filing of the petition but unliquidated on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an investigation pending on such date into assessment of antidumping or countervailing duties or fraud, or if information needed for the proper appraisement or classification of such merchandise is not available to the appropriate customs officer before such date.

FBCB is not a "governmental unit" as defined in Bankruptcy Code § 101(27), but claims priority by virtue of having paid on behalf of Brickel a claim due to the U.S. Customs Service ("Customs"), which is.

Bankruptcy Code § 507(d) limits the rights a claimant can acquire by subrogation, stating:

An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

Although Bankruptcy Code § 507(d) does not expressly include § 507(a)(7) priority claims, this court recognized in *Matter of Barefoot Sports, Inc.*, 61 B.R. 546, 548 n. 2 (Bankr. W.D.Wis.1986), that Congress inadvertently neglected to revise Bankruptcy Code § 507(d) in 1984 to include § 507(a)(7) priority claims. Other courts and scholars have uniformly accepted the application of Bankruptcy Code § 507(d) to § 507(a)(7) priority claims. *See Creditor's Committee v. Com. of Mass., Dept. of Revenue,* 105 B.R. 145 (D.Mass.1989); Robert E. Ginsberg and Robert D. Martin, *Bankruptcy: Text, Statutes and Rules,* § 10.08[q], p. 10–72, n. 319 (3rd ed.1992).

FBCB alleged that its priority claim does not arise by subrogation, but rather by a form of governmental assignment. Revised in 1992, the Code of Federal Regulations, 19 CFR 141.1, now states:

Section 141.1 Liability of Importer for Duties.

.        .        .        .        .

(c) **Claim Against Estate of Importer.** The claim of the government for unpaid duties against the estate of a deceased or insolvent importer has priority over obligations to creditors other than the United States. To the extent that a broker or a surety pays duties on behalf of an importer which files for bankruptcy protection, the broker or surety shall be entitled to assume the priority status of Customs under § 507(a)(7) of the Bankruptcy Code for that portion of customs claim which the surety or broker has paid.

19 CFR 141.1

In a Treasury Decision explaining 19 CFR 141.1 (TD 92–58 Customs Bulletin and Decisions, Vol. 26, No. 27, July 1, 1992, pp. 1–5 at 1), the Commissioner of Customs analyzed

142

the effect of Bankruptcy Code § 507(d) on subrogees of Customs and suggested that assignees would receive different treatment:

The Bankruptcy Code provides in § 507(d) that an entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(6) [subsequently changed to (a)(7) in Public L. No. 98–353, but not so reflected in section 507(a) ] is not subrogated to the right of the holder of such a claim to priority under such subsection. Indeed, this language would preclude assertion of priority status by an entity other than Customs under a theory of subrogation.

In this amendment, Customs is not attempting to use the theory of subrogation to enable brokers and sureties to assert its priority. Instead, Customs is assigning its priority rights in any bankruptcy action to brokers and sureties to the extent that the broker or surety has paid the duties that were due on the imported merchandise. By stating that this is an assignment of rights in the amendment, Customs intends to preclude possible questions of agency intent in the future.

Although it has been stated that promulgation of rules and regulations in the Code of Federal Regulations and the Federal Register has the full force and effect of law, *Pringle v. U.S.*, 419 F.Supp. 289 (D.S.C. 1976), that is not to say that an administrative agency may by virtue of its rule making power amend an enactment of Congress such as the Bankruptcy Code. *Chevron U.S.A. Inc. v. National Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694, 703 (1984); *F.E.C. v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). The principles for evaluating agency interpretations of Congressional statutes are well settled. *See United States v. State of Alaska*, —— U.S. ——, 112 S.Ct. 1606, 118 L.Ed.2d 222 (1992). The Supreme Court in *Chevron* created a two-prong test which may be applied to all attempts by agencies to give meaning to a federal statute:

When a court reviews an agency's construction of the statute which it administers, it is confronted by 2 questions. First, always is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82.

The first prong is decisive in this instance since Congress seems to have intended, by enacting 11 U.S.C. § 507(d), for the governmental unit alone to retain its priority under 11 U.S.C. § 507(a)(7).

Section 507(d) is a provision without much legislative history. Absent from both the House and Senate versions of the bill, § 507(d) first appeared in the compromise bill that was enacted into law. No policy justifications seem to be given by the joint statements of the floor managers. *See* 124 Cong.Rec. S17,411 (daily ed. Oct. 6, 1978) and H11,905 (daily ed. Sept. 28, 1978). Nonetheless, since the words of the statute themselves establish that Congress intended the priority to remain with the governmental unit, the judiciary retains final authority on issues of statutory construction and must reject administrative constructions which are contrary to the clear congressional intent. *See Chevron*, 467 U.S. at 842–43 n. 9, 104 S.Ct. at 2781–82 n. 9.

Many courts have interpreted the scope of Bankruptcy Code § 507(d). In *Matter of Barefoot Sports, Inc.*, 61 B.R. 546 (W.D.Wis. 1986), David Spencer, a principal of the debtor, claimed that involuntary payments he made to the IRS constituted a priority claim in bankruptcy. The debtor owed a tax liability to the IRS. The IRS notified Mr. Spencer that the overpayment on his individual tax return was being applied to the debtor's tax

liability. Spencer's claim was considered a subrogation claim by the court and Mr. Spencer was denied priority. This court stated that "[t]his result holds true even if the subrogee has received an express assignment of the taxing authority's rights", 61 B.R. at 548, and cited *In re Woerner*, 19 B.R. 708 (Bankr.D.Kan.1982).

In *Woerner*, the creditor insurance company wrote a bond in favor of the debtor to bond the payment of the debtor's fuel tax obligations. The debtor defaulted and the creditor paid the tax owing. The state taxing authority issued a document to the creditor which assigned all of its rights to the creditor. In finding that the situation was a true subrogation case, the *Woerner* court determined that an assignment of rights after a subrogation is established does not create a priority. The court cites 73 Am. Jur.2d Subrogation § 111 at p. 670 (1974) for its finding that if a subrogation is shown to exist, an assignment adds nothing to the right.

The *Woerner* court also stated:

It may be true that if an entity is truly an assignee § 507(d) would not bar assignment of the priority claim, *see In re Missionary Baptist Foundation of America, Inc.*, 12 B.R. 570 (Bankr.N.D.Tex.1981), but where a true subrogation is presented, as in the instant case, priority status is not allowed under § 507(d).

By its rules and commentary, Customs has attempted to convert the rights of its subrogees to rights of assignees, but changing the names does not make it so. No greater rights are given, except those that attach to the name. If it looks like a subrogation and "quacks" like a subrogation, we must conclude that it is a subrogation. Where the relationship of the parties arises from the same transaction, the payment of a custom duty, and operates solely by force of law, it is subrogation no matter the name under which it parades. FBCB is entitled to no priority. Whether this is a good result in some larger sense must be addressed by Congress, not by this court nor under the rule making power given Customs.

## ORDER

The court having this day entered its Memorandum Decision in the above-entitled matter;

IT IS HEREBY ORDERED that the claim of Freight Based Customs Brokers, Inc. is not entitled to priority pursuant to 11 U.S.C. § 507(a)(7)(F).