**In re CHALK LINE MANUFACTURING, INC., Debtor.**

**Bankruptcy No. 93–42773.**

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

May 2, 1995.

Romaine S. Scott, Birmingham, AL, for Eric Jones Custom Brokers.

Robert H. Adams of Najjar Denaburg, P.C., Birmingham, AL, for debtor in possession.

Mark Williams of Gordon Silberman Wiggins & Childs, Birmingham, AL, for unsecured creditors committee.

## Memorandum Opinion and Order on Request for Allowance and Payment of Administrative Expenses

JAMES S. SLEDGE, Bankruptcy Judge.

On August 16, 1994, the Court held a hearing at Anniston, Alabama, on Eric Jones Customs Brokerage ("Jones") request for allowance and payment of administrative expense under 11 U.S.C. §§ 503(a) and 503(b), and the asserted priority of said administrative expense under 507(a)(7)(F). The debtor's attorney, the movant's attorney, and the attorney for the creditor's committee appeared before the Court. The Court took the request and objection under submission. By September 9, 1994, as directed by the Court both parties to this action submitted briefs in support of their position to the Court, and the briefs were last amended on November 3, 1994.

The Court entered a Memorandum Opinion and Order on November 30, 1994, denying the Jones request. Jones filed a motion for reconsideration. A hearing was scheduled for January 3, 1995, and continued at Jones' request. On March 3, 1995, Jones asked for the hearing to be rescheduled, and the motion was presented to the Court on March 28, 1995. The motion asked for one conclusion to be deleted as dicta, and thereafter the debtor in possession and the unsecured creditors committee have consented. Without opposition, the motion for reconsideration is GRANTED and the following constitutes the findings of fact and conclusions of law, as amended:

### Findings of Fact

Upon consideration of the request, the statements of the respective parties at said hearing, the briefs filed by the respective parties and the case file, of which the Court takes judicial notice, the Court finds the facts to be as follows:

1. On June 15, 1993, Dan Peoples, as president of Chalk Line, Inc., ("debtor") entered into a prepetition corporate power of attorney with Eric Jones Customs Brokerage by which the debtor appointed Jones as its true and lawful agent and attorney to do anything necessary for the importation of goods for and in the name of the debtor, including payment of customs duties. Said power of attorney is effective until revoked in writing.

2. The only other agreements entered into by Jones and debtor are those agreements printed on the back of invoices sent by Jones to debtor.

3. Jones paid $23,864.29 in customs duties to the U.S. Customs Service of the United States Department of the Treasury. Jones was not obligated to incur any expense, guaranty payment or advance any money for the payment of the import duties on behalf of the debtor.

4. On April 16, 1994, Jones filed a proof of claim asserting an unsecured debt of $28,-241.16 and a priority debt of $23,864,29, for custom duties it paid on behalf of the debtor, for a total of claim of $51,105.45.

5. On July 7, 1994, Jones filed a request for allowance and payment of administrative expenses, with said administrative expenses having priority status under 11 U.S.C. § 507(a)(7)(F).[1]

6. On July 14, 1994 and July 15, 1994 the debtor and the unsecured creditors committee filed an objection to Jones' motion, denying Jones' claim to priority. Said objection led to the hearing of August 16, 1994.

### Discussion and Conclusions of Law

Jones maintains that it is entitled to priority under 11 U.S.C. § 507(a)(7)(F), which provides priority for "governmental units" with claims for "a customs duty arising out of the importation of merchandise." Jones is not a "governmental unit" pursuant to 11 U.S.C. § 101(27). However, Jones asserts it acquired the priority of a "governmental unit,"

1. 11 U.S.C. § 507(a)(7)(F) was amended to 11 U.S.C. § 507(a)(8)(F) by the Bankruptcy Reform Act of 1994.

namely the Customs Service of the United States Department of the Treasury, under 19 C.F.R. § 141.1, when it paid $23,864.29 in customs duties, on behalf of the debtor to the Customs Service. 19 C.F.R. § 141.1 purports to assign the claim Customs has for unpaid duties against the estate of an insolvent importer, as well as the priority status of Customs for such claims under 11 U.S.C. § 507(a)(7) to the broker of an insolvent importer. Jones argues that as a broker for the debtor they were assigned Customs claim and priority upon payment of the customs duties. Jones argues that even if they are a subrogee of Customs' claim, they still possess priority status under § 507(a)(7) because the Code should be read exactly as written. Since § 507(d) does not bar the priority status of subrogee's under subsection (a)(7), subrogee's falling under 507(a)(7) do have priority status.

The debtor argues that regardless of the characterization the administrative regulation gives to the rights Jones acquired upon payment of the customs duties, Jones was not assigned the rights of Customs. Rather, Jones is subrogated to the rights of Customs. As a subrogee of Customs, debtor asserts that the priority provided by 11 U.S.C. § 507(a)(7) is barred by 11 U.S.C. § 507(d) which provides:

> An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5) or (a)(6) of this section is not subrogated to the rights of the holder of such claim to priority under such subsection.

Although said section does not include subsection (a)(7), debtor maintains that in 1984 when Congress redesignated 11 U.S.C. § 507(a)(6) to 11 U.S.C. § 507(a)(7), Congress inadvertently failed to make a corresponding change in 11 U.S.C. § 507(d). Therefore, 11 U.S.C. § 507(a)(7) was not in-

tended to be excluded from 11 U.S.C. § 507(d) and should be included therein.

■ **I.** The Court will first address the issue of the meaning of 11 U.S.C. § 507(d). The parties have asked this Court to resolve the ambiguity of § 507(d), a seemingly straight forward statute. Section 507(d) provides:

> An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to the priority under such subsection.

The apparently clear language of this statute is deceptive.

A little history of § 507 is necessary to see the ambiguity this Court is asked to resolve. As originally passed by Congress, § 507(d) barred the subrogation of the priority status given to governmental units for unpaid taxes. In 1984, as part of the Federal Judgeship Act of 1984, Congress amended § 507(a) to provide a new priority to unsecured claims of grain or fish producers to the extent of $2,000 where a storage facility files for bankruptcy. Instead of adding this new exemption to the end of the list, Congress in its infinite wisdom inserted the new exemption into the middle of the list provided in § 507(a).[2] Congress designated the new priority as § 507(a)(5) which resulted in the tax priority previously designated as § 507(a)(6) being redesignated § 507(a)(7). Congress did not track this redesignation in § 507(d).

Adding to the ambiguity created by the redesignation of the tax priority is the fact that § 507(d) has little legislative history. The legislative history from the 1984, 1986 and 1990 amendments to the Bankruptcy Code simply does not address § 507(d). Courts have uniformly interpreted this silence to mean that Congress did not mean to change the substance of § 507(d).[3] *See In re*

---

**2.** Perhaps Congress would have been better served if they had just removed the priority given to taxing authorities since they are not the kind of entities that need the protection given by § 507(a).

**3.** The Bankruptcy Reform Act of 1994 addressed this technical error by amending 11 U.S.C. § 507(d) to read "An entity that is subrogated to

the rights of a holder of a claim specified in subsection (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), or (a)(9) of this section is not subrogated to the right of the holder of such claim to priority under such subsection." Besides making this issue moot in the future, this amendment is strong evidence of legislative intent.

*Brickel,* 170 B.R. 140 (Bankr.W.D.Wis.1994); *In re Henzler,* 89 B.R. 655 (Bankr.N.D.Ohio 1988); *In re Trasks' Charolais,* 84 B.R. 646 (Bankr.D.S.D.1988); *In re Cooper,* 83 B.R. 544 (Bankr.C.D.Ill.1988). This interpretation is based on the presumption that "repeals of judicial constructions of legislation are usually required to be clear and manifest." *In re Missionary Baptist Foundation of America,* 667 F.2d 1244, 1246 (5th Cir.1982).

Based on the foregoing, this Court finds that § 507(d) does apply to § 507(a)(7) and that the subrogation of Eric Jones to the Custom's Service § 507(a)(7) priority is barred.

■ **II.** As the interpretation of § 507(d) did not resolve all the pending issue, the Court will now address the issue of whether the Customs Service assigned its rights to Eric Jones or whether Eric Jones is merely subrogated to any rights that the Customs Service had. If Jones is found to be an assignee, rather than a subrogee, the § 507(d) bar to priority status has no effect and Jones is entitled to priority. *See In re Missionary Baptist Church,* 667 F.2d 1244.

■ The Bankruptcy Code does not specifically define "subrogation." Jones contends the Court should look to 11 U.S.C. § 509(a) and the purported definition of subrogation therein and apply it to § 507(d). Jones bases this reading of the statute on the presumption of statutory construction "that where the same words are used in different parts of an act, and where the meaning in one instance is clear, other uses of the word in the act have the same meaning as that where the definition is clear." *In re Missionary Baptist Foundation of America, Inc., et al.,* 667 F.2d 1244, 1245 (citations omitted); *see ICC Industries Inc. v. United States,* 812 F.2d 694 (Fed.Cir.1987). Jones argues § 509(a) has a restricted definition of subrogation, and applies only to co-debtors, sureties, and other entities liable with the debtor. Applying this purported definition to other uses of the word subrogation in the Bankruptcy Code, i.e. § 507(d), Jones as a customs broker would not fall within the parameters of subrogation as used in § 509(a).

■ The Court rejects this argument. The statutory presumption requires the meaning in one instance to be clear, in order to apply it in another section of the act. Section 509(a) is not a definition of subrogation. It merely "establishes that co-debtors and sureties are subrogees [and] it does not necessarily follow from this that others are not subrogees." *In re Missionary,* 667 F.2d at 1246. Without a clear use of the word in one instance, the meaning used therein cannot be applied to other uses of the word.

■ Without a definition of subrogation in the Bankruptcy Code the Court must look outside the Code. *See In the Matter of William H. Waite,* 698 F.2d 1177 (11th Cir. 1983) (While not discussing the particular state law, the court recognized *Gilbert v. United States Fidelity & Guaranty Co.,* 274 F.2d 823 (5th Cir.1960), which applied state law to determine whether a surety who paid debtor's tax liability was subrogated to the right of the taxing authority); *In re New England Fish Co.,* 749 F.2d 1277 (9th Cir. 1984) (applied equitable subrogation without any reference to the Code); *In re Glade Springs, Inc.,* 826 F.2d 440 (6th Cir.1987) (applied equitable subrogation without any reference to the Code); *In re Spirtos, M.D.,* 103 B.R. 240, 244 (Bankr.C.D.Cal.1989) ("Section 507(d) refers to general subrogation rights that arise for the Code itself, state statutes, and the common law." The court went on and stated "[a]s a general rule of federal procedure, '[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.' ") (citing *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *In re Munzenrieder Corporation,* 58 B.R. 228 (Bankr.M.D.Fla.1986) (applied equitable subrogation without any reference to the Code). Thus, whether Jones is subrogated to Customs' rights is to be determined under Alabama law.

■ Alabama courts recognize the doctrine of "equitable subrogation." *See Fidelity and Casualty Company of New York v. Central Bank of Birmingham,* 409 So.2d 788 (Ala.1982); *Citizens Bank of Guntersville v. Pearson,* 217 Ala. 391, 394, 116 So. 350

(1927). The 5th Circuit in analyzing Alabama law of subrogation looked to the Restatement of Restitution, which the Court concluded was in accord with Alabama case law, namely *Carter v. Carter*, 251 Ala. 598, 38 So.2d 557 (1949) and *Dothan Grocery Co. v. Dowling*, 85 So. 498 (Ala.1920). *Industrial Development Board of Town of Section, Alabama v. Fuqua Industries, Inc.*, 523 F.2d 1226, 1232–33 (5th Cir.1975). The 5th Circuit stated:

> The starting place for this analysis is the Restatement of Restitution § 162, which declares that:
>
>> Where property of one person is used in discharging an obligation owed by another . . ., under such circumstance that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee. . . .
>
> Although Comment b to this section of the Restatement points out that if a person makes an "officious" payment that person is not entitled to reimbursement, it excludes from its definition of "officious": a payment made to protect an interest of the payor.
>
> *Id.* at 1232.

Collier similarly describes the equitable doctrine of subrogation to

> include every instance in which one party pays the debt for which another is responsible so long as the payment was made under compulsion or to protect the party making the payment and in the discharge of some existing liability.
>
> 3 Collier on Bankruptcy at ¶ 507.07.

 In the case at bar, it is undisputed that Jones paid the Customs debt of the debtor and that Jones was under no obligation to pay the debt. Equitable subrogation requires the payment to have been made under compulsion (not "officious") or to protect the payor's interest. As Jones' payment was voluntary, it was not made under compulsion. However, arguably payment was made to protect its interest. That is, the payment was made by Jones to protect its contract interest with the debtor and, therefore, would not be "officious" as described by the Restatement. Jones as a party who paid another's debt to protect his own interest is subrogated to the rights of the creditor. *See Mutual Savings Life v. Montgomery*, 347 So.2d 1327, 1328 (Ala.1977) ("[T]he right of subrogation extends to those 'who pay the debt in self protection, since they might suffer loss if the obligation is not discharged.' "). The 5th Circuit in analyzing the interest a party must have to be protected stated:

> The extent or quantity of (a) subrogee's interest which is in jeopardy is no material. If he has any palpable interest which will be protected by extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could.
>
> *Fuqua Industries, Inc.*, 523 F.2d at 1234 (quoting 73 Am.Jur.2d § 25, at 615).

By advancing the duties, Jones was not acting purely altruistic; Jones was able to avoid possible delays in the clearance of goods, caused by requiring the debtor to advance the duties.

As the 5th Circuit pointed out, at least one Alabama case suggests a party must be "secondarily liable" in order to be entitled to subrogation. *Fuqua Industries, Inc.*, 523 F.2d at 1234. The Court concluded that the holding is not a limitation on the type of interest a party must have to be entitled to subrogation. *Id.* Rather, the Alabama case merely held that "where a party has promised to pay an amount, not as surety for another, for his own account, that party is not entitled to subrogation." *Id.* The Court in *Fuqua* found that where a lessee paid money to repair buildings it was leasing, the lessee was subrogated to the lessor's rights against the contractor. *Id.* at 1232. In doing so the Court found that the lessee had a sufficient interest to protect to subrogated, despite the fact there was no basis on which the lessee could be secondary liable. *Id.* at 1234.

 The Court must ask whether recognizing the particular subrogation claim in question, would promote justice. *Fuqua Industries, Inc.*, 523 F.2d 1226 (5th Cir.1975). "Subrogation is an equitable doctrine based on principles of common law and is not a matter of strict right, but is purely equitable

in nature. *In re Ted True, Inc.*, 94 B.R. 423, 427 (Bankr.N.D.Tex.1988) (citing *Matter of Bugos*, 760 F.2d 731 (7th Cir.1984)). Without considering the effect the possible bar of 507(d) on Jones' priority status, the Court finds that "equity" would allow Jones to be subrogated to Customs. The Court finds that Jones' ability to continue importing goods for the debtor, without any delays, which would likely cause the financial rewards of the operation to be lowered, is a "palpable interest" to be protected by extinguishment of the debt. To conclude otherwise would create a windfall to the party whose debt has been discharged.

 **III.** With the finding that § 507(d) does apply to § 507(a)(7) and Eric Jones is in fact subrogated to Custom's Service § 507(a)(7) priority, the Court must address the effect if any of 19 C.F.R. § 141.1 on Jones' status as subrogee. The Customs Service by 19 C.F.R. § 141.1 purports to assign to a broker who pays customs duties on behalf of an importer the priority status of Customs under § 507(a)(7) to the broker. Assignment is the transfer of some right or interest, from one person to another and requires that the obligee manifest an intent to assign. *See e.g. In re International Engineers, Inc.*, 812 F.2d 78 (2nd Cir.1987). Jones asserts that the C.F.R. would provide such intent, and therefore, due to the assignment provisions of 19 C.F.R. 141.1 it is not a subrogee. The Court rejects this conclusion and finds that 19 C.F.R. 141.1 has no effect on Jones' status as a subrogee.

In 19 C.F.R. 141.1 the administrative agency went beyond its authority in attempting to treat brokers as assignees rather than subrogees. The Customs Duties Tariff Act of 1930 gives the Secretary of the Treasury the power to "prescribe such rules and regulations relating to the customs business of customs brokers that the secretary considers necessary to protect importers and the revenue of the United States." 19 U.S.C. § 1641(f). The Secretary has attempted to promulgate a regulation effecting the priorities of the Bankruptcy Code which is clearly beyond any authority conferred on the Secretary under 19 U.S.C. § 1641(f).

If the Secretary was exercising a valid power in general, applying the principles for evaluating agency interpretations, as set forth by the United States Supreme Court, the regulation is invalid in the case at bar. In *United States v. State of Alaska*, 503 U.S. 569, 575, 112 S.Ct. 1606, 1610, 118 L.Ed.2d 222 (1992), the Court stated that courts must first decide if "Congress has directly spoken to the precise question at issue" and if not, is the agency's answer "based on a permissible construction of the statute." (citations omitted). Congress specifically addressed the precise question at issue, i.e., is a customs broker like Jones subrogated to the Government's priority and Congress has answered this question negatively. Applying the Court's finding that § 507(d) does apply to § 507(a)(7), the regulation conflicts directly with the rights granted by Congress in § 507(d). Since Congress has spoken to the precise question, the Court does not need to analyze the second prong of the test.

### *Conclusion*

Therefore, pursuant to the findings of fact and conclusions of law as set forth above, and for good cause found, it is ORDERED by the Court that the Request for Allowance and Payment of Administrative Expenses filed by Eric Jones Customs Brokerage is hereby DENIED.